# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **B.M. and C.M.**

**No. 18-0266** (Taylor County 17-JA-43 and 44)

**FILED**

**October 12, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother A.B., by counsel Mary S. Nelson, appeals the Circuit Court of Taylor County's February 12, 2018, order terminating her parental rights to B.M. and C.M.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Terri L. Tichenor, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights when less-restrictive alternatives were available.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In April of 2017, the DHHR filed a child abuse and neglect petition against petitioner and the father of B.M., alleging that petitioner was in an intoxicated state upon presenting to the hospital to give birth to B.M. According to the petition, B.M. tested positive for Suboxone and amphetamines, and exhibited signs of withdrawal including poor feeding, increased respiration, nasal flaring, tremors, watery stools, and issues with sleeping. Petitioner admitted that she abused drugs such as cocaine and Suboxone during her pregnancy. Further, petitioner was arrested shortly after B.M.'s birth due to her non-appearance on a second offense shoplifting case and reported to the sheriff that she was abusing methamphetamines. Regarding C.M., the DHHR alleged that the child lived with her non-abusing father and had only minimal contact with petitioner.

The circuit court held an adjudicatory hearing in June of 2017. Petitioner testified that she had been in a relationship with B.M.'s father for five years, despite the fact that he abused drugs

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

1

and committed domestic violence against her, even though she knew it was detrimental to her relationship with C.M. She admitted that she was a drug addict and abused methamphetamine, heroin, and Subutex. However, petitioner claimed that her intoxicated state upon arriving at the hospital was due to taking several Benadryl pills, and not due to drug use. Petitioner reported that she continued to remain in contact with B.M.'s father because he supplies her with drugs. Testimony established that petitioner had only seen C.M. approximately five times since 2012 and that she had not provided any support for the child. Petitioner requested a post-adjudicatory improvement period. However, the circuit court denied her request, finding that petitioner failed to demonstrate that she was likely to fully participate in an improvement period due to her abandonment of C.M. and her continued relationship with B.M.'s father, whom she saw nearly daily in order to obtain drugs. Accordingly, the circuit court adjudicated her as an abusing parent.

The circuit court held an initial dispositional hearing in September of 2017, wherein petitioner failed to appear but was represented by counsel. Petitioner's counsel moved to continue the hearing and the circuit court granted her request. In November of 2017, the circuit court held the final dispositional hearing. Petitioner again failed to attend but was represented by counsel, who informed the circuit court that petitioner failed to maintain contact. Ultimately, the circuit court found that petitioner evidenced her intention to abandon the children by her failure to maintain contact with her attorney, and her failure to contact the DHHR or the guardian in order to inquire into the wellbeing of her children. Accordingly, the circuit court found that termination of petitioner's parental rights was in the children's best interest. It is from the February 12, 2018, order terminating her parental rights that petitioner appeals.[2]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

---

[2]The parents' parental rights were terminated below. B.M. has been placed in a foster home and the permanency plan is adoption therein. The permanency plan for C.M. is to remain in the custody of her non-abusing father.

On appeal, petitioner argues that the circuit court erred in terminating her parental rights when less-restrictive alternatives were available. First, petitioner states that she should have been granted a post-adjudicatory improvement period in order to address the conditions of abuse. Second, petitioner argues that the circuit court could have granted her a disposition pursuant to West Virginia Code § 49-4-604(b)(5), which provides, in part, that upon a finding that the parent is presently unwilling or unable to provide for the child's needs, a circuit court may "commit the child temporarily to the care, custody, and control of the state department, a licensed private child welfare agency, or a suitable person who may be appointed guardian by the court." We disagree.

To begin, the decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W.Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements."). We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period. . . .'" *In re Charity H.*, 215 W.Va. 208, 215, 599 S.E.2d 631, 638 (2004).

Here, the circuit court found that petitioner failed to demonstrate that she was likely to participate in an improvement period due to her continued relationship with B.M.'s father and her abandonment of C.M. While petitioner did move out of B.M.'s father's home in order to regain custody of B.M., she admitted that she continued to see the father nearly daily in order to obtain drugs. As to C.M., the evidence established that petitioner only visited with C.M. five times in approximately five years and provided no support for her. After requesting an improvement period, petitioner failed to participate in the proceedings, did not attend the dispositional hearings, and did not maintain contact with either her attorney or the DHHR. As such, we find that petitioner did not demonstrate that she was likely to fully participate in an improvement period and the circuit court did not err in denying her the same.

Moreover, the circuit court did not err in denying petitioner a less-restrictive alternative to termination of her parental rights. Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate parental rights upon findings that there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected in the near future and when necessary for the children's welfare. West Virginia Code § 49-4-604(c)(4) clearly indicates that a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which "[t]he abusing parent or parents have abandoned the child[.]" Further, West Virginia Code § 49-1-201 sets forth that "'[a]bandonment' means any conduct that demonstrates the settled purpose to forego the duties and parental responsibilities to the child[.]"

The record establishes that there was sufficient evidence upon which to terminate petitioner's parental rights. Petitioner failed to visit C.M. consistently over the course of five years. Petitioner saw her approximately five times during that period and provided no support for her. Moreover, petitioner failed to participate in the proceedings below. She failed to attend both

dispositional hearings and did not maintain contact with her counsel. According to the guardian, petitioner also failed to attend any multidisciplinary team meetings and did not contact the guardian or the DHHR to inquire about the children's wellbeing. As such, petitioner's nearly complete absence from the lives of her children demonstrated her settled purpose to forego her duties and parental responsibilities to her children. Additionally,

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W.Va. Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W.Va. Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). Based upon the evidence set forth above, we find that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and termination was necessary for the children's welfare. Accordingly, we find no error in the circuit court's decision to terminate petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its February 12, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**:  October 12, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Paul T. Farrell sitting by temporary assignment
Justice Tim Armstead
Justice Evan H. Jenkins

Justice Allen H. Loughry II, suspended and therefore not participating